**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Adran Morga Mariche,<br><br>            Plaintiff,<br><br>v.<br><br>Phoenix Oil, LLC; William J. Donovan, III; Kristen B. Donovan; James J. Gaffney,<br><br>            Defendants. | No. CV-13-00550-PHX-NVW<br><br>**ORDER** |

Before the Court is Plaintiff Adran Mariche's Motion for Partial Summary Judgment (Doc. 29), and Defendants' Cross-Motion for Summary Judgment (Doc. 33). Also before the Court is Defendants' Motion for Summary Judgment re State Law Claim (Doc. 38). For the following reasons, summary judgment will be denied on all counts, except that Defendants' motion to dismiss Kristen Donovan will be granted.

## I.   BACKGROUND

Plaintiff Adran Mariche was employed by Defendant Phoenix Oil at a Phoenix-area convenience store and gas station. For the first two-and-a-half years, Mariche was an hourly cashier making $8.50 and then $8.75 per hour. [PSOF ¶ 2]. He was promoted to a salaried position on August 20, 2010 and began receiving a weekly salary of $453.85, $480.77, and then $500.00 over the next three years. [PSOF ¶¶ 2-3].

Phoenix Oil and Mariche disagree on the material facts surrounding the terms and conditions of his employment. Once salaried, Phoenix Oil alleges Mariche took on a

managerial role while Mariche asserts he continued to perform the same duties as other hourly workers. As part of his salaried position, Mariche claims he was generally scheduled to work from 10:00p.m. to 8:00a.m. on weekdays but often had to work an additional two hours after his official shift ended. [PSOF ¶ 5]. Phoenix Oil denies that Mariche was ever required to stay later than his assigned shift. [DSOF ¶ 31].

During his shifts, Mariche performed some managerial tasks. These included receiving shipments, directing the other night shift employee(s), completing end of shift paper work, and closing out the cash registers. [PSOF ¶¶ 10, 17, 23]. Mariche also performed tasks consistent with a general, hourly employee such as running the cash register, restocking shelves, cleaning the store, and overseeing the hot food items. [PSOF ¶¶ 10 – 20]. He wore the same shirt as all the other employees and his name badge bore no managerial title. [PSOF ¶¶ 31-35]. Mariche claims the store's day manager wore a different color shirt that identified him as a manager, but Phoenix Oil states that, per company policy, all employees wore the same uniform and no special designation was given to managers. [DSOF ¶ 73].

Mariche also asserts that he was rarely responsible for supervising more than one employee, except in the early mornings when a second employee would arrive around 6:00 or 7:00a.m. [PSOF ¶¶ 8-10]. Phoenix Oil contends that two or three employees were on the clock during Mariche's night shift and that Mariche supervised at least 96 employee work hours each week. [DSOF ¶¶ 19-21]. When Mariche was present at the store, there was only one other employee with him for the majority of his shift. Half of the supervisory hours attributed to Mariche by Phoenix Oil are from nights when Mariche was not scheduled to work in the store but was still considered in charge of the night shift by Phoenix Oil. Mariche disputes that he was managing employees on days when he was not scheduled to work.

Mariche now brings this Partial Motion for Summary Judgment, contending Phoenix Oil misclassified him as an exempt employee under the Fair Labor Standards Act ("FLSA"). (Doc. 29). Defendant Phoenix Oil cross-moves for summary judgment,

1  arguing Mariche was properly characterized as an exempt employee under the FLSA.
2  (Doc. 33). Phoenix Oil also moves for summary judgment on Mariche's state law claim
3  (Doc. 38), which asserts liability under Arizona law for failure to pay overtime wages.
4  *See* A.R.S. § 23-355.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the moving party carries its burden of demonstrating that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A material fact is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

Once the moving party has carried its burden under Rule 56, the party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The facts are "viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. MARICHE'S IMMIGRATION STATUS

When applying for a job with Phoenix Oil, Mariche presented a social security number and driver's license bearing the name Nicholas Vlisides. [DSOF 7]. The Nicholas Vlisides associated with that social security number, however, is an insurance agent residing in Texas. [DSOF 10]. Phoenix Oil states that it uses E-Verify [DSOF ¶ 9], an online program run by the federal government and used by employers to verify that a potential employee is eligible to work in the United States, but Phoenix Oil

1  does not claim that it ran Mariche's information through the E-Verify system or that the
2  system confirmed Mariche's eligibility to work in the United States. When asked
3  whether he used a false identity to obtain employment, Mariche asserted his Fifth
4  Amendment right against self-incrimination. [DSOF 51].

5  When a plaintiff invokes his Fifth Amendment right in response to probative
6  evidence offered against him in a civil case, an adverse inference is permitted. *See*
7  *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) (noting that "the Fifth Amendment does
8  not forbid adverse inferences against parties to civil actions when they refuse to testify in
9  response to probative evidence offered against them"). Mariche's refusal to discuss the
10 use of Mr. Vlisides's social security number permits an inference that Mariche is an
11 unlawful resident of the United States who fraudulently obtained employment through
12 the use of another person's identity. Phoenix Oil contends that Mariche is barred from
13 recovering any unpaid wages under the FLSA because he was not authorized to work in
14 the United States while employed by Phoenix Oil.

15 Phoenix Oil relies on *Hoffman Plastic Compounds v. NLRB*, 535 U.S. 137 (2002),
16 which holds that a person not authorized to work in the United States is barred from
17 recovering back pay under the National Labor Relations Act ("NLRA"). In *Hoffman*
18 *Plastic*, the plaintiff was fired for engaging in pro-union activities. *Id*. at 141. The
19 National Labor Relations Board determined his firing violated the NLRA, awarded the
20 plaintiff back pay, and ordered his employer to reinstate him. *Id*. The back pay was
21 awarded for the time between the plaintiff's termination and reinstatement, a period
22 during which the plaintiff performed no actual work for the employer. *Id*. At a later
23 hearing, the plaintiff admitted he was not legally present in the United States, had no
24 authorization to work, and had used another individual's birth certificate to obtain
25 employment. *Id*. The employer then challenged the award, arguing the plaintiff's
26 immigration status barred an award of back pay under the NLRA. *Id.* at 142.

27 The Supreme Court agreed, holding that the Board was required to consider how
28 Congressional objectives would be impacted by any remedy provided and noting that

- 4 -

earlier case law had already established that the Board's authority was "limited by federal immigration policy." *Id*. at 145 (citing *Sure-Tan, Inc. v. N.L.R.B.*, 467 U.S. 883, 903 (1984)). The Court concluded that because the Immigration Reform and Control Act ("IRCA") criminalized the use of fraudulent identifying documents to obtain employment, "allowing the Board to award backpay to illegal aliens would unduly trench upon explicit statutory prohibitions critical to federal immigration policy." *Id.* at 138. In overturning the Board's award, it held that a plaintiff without a legal right to work in the United States could not be awarded back pay for a time when the plaintiff did no actual work. *Id*. at 152-53. The Court held that awarding back pay was not essential to punishing the employer because other sanctions, such as orders that the employer cease its violations of the NLRA, would serve to enforce national labor policy. *Id*. at 153.

*Hoffman Plastic* limited the remedies available to undocumented employees under the NLRA but did not disturb their status as employees covered by the statute. *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 892 (1984). Like the NLRA, the FLSA broadly defines an employee as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The statute excludes volunteers and other select groups from the definition of employee but says nothing about excluding undocumented workers. *Id*. at § (e). Undocumented workers are considered employees under the FLSA. *See Lucas v. Jerusalem Café, LLC*, 721 F.3d 927, 934 (8th Cir. 2013) (citing *City of Milwaukee v. Ill. & Mich.*, 451 U.S. 304, 329 n.22 (1981) (noting that Congress knows how to limit the definition in a statute when it means to)).

A narrow reading of *Hoffman Plastic* is that it limits the NLRB's remedial discretion to afford remedies that conflict with IRCA but does nothing to limit a federal court's discretion to balance the mandates of IRCA against another statute. *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1068 (9th Cir. 2004). The Ninth Circuit suggested that reading, in part, when it held that a district court can bar discovery of a plaintiff employee's immigration status in the liability phase of a Title VII action. *Id.*

But even under a broad reading, *Hoffman Plastic* does not address whether an

1    undocumented worker can recover for unpaid wages under the FLSA.  Two circuits have
2    directly addressed the issue and have held that *Hoffman Plastic* does not bar recovery
3    under the FLSA for work already performed by employees who were unlawfully present
4    in the United States and could not legally obtain employment.  *See Lucas v. Jerusalem*
5    *Café, LLC*, 721 F.3d 927 (8th Cir. 2013); *Lamonica v. Safe Hurricane Shutters, Inc.*, 711
6    F.3d 1299 (11th Cir. 2013); *see also Maderia v. Affordable Housing Foundation, Inc.*,
7    469 F.3d 219, 243 (2d Cir. 2006) (noting that employees in violation of IRCA are still
8    entitled to back pay under the FLSA).

9          As the cases supporting recovery under the FLSA note, a key difference between
10   the NLRA plaintiffs in *Hoffman Plastic* and an FLSA plaintiff is that "an FLSA plaintiff
11   is not attempting to recover back pay for being unlawfully deprived of a job that he could
12   never have lawfully performed.  Rather, he simply seeks to recover unpaid minimum
13   wages and overtime for work *already performed.*" *Lamonica*, 711 F.3d at 1308 (internal
14   citations and quotations omitted, emphasis in original).  A remedy for back pay under the
15   FLSA "merely ensures that the employer does not take advantage of the violation by
16   availing himself of the benefit of undocumented workers' past labor without paying for it
17   in accordance with minimum FLSA standards." *Madeira*, 469 F.3d at 243.  "Holding
18   employers who violate federal immigration law and federal employment law liable for
19   both violations advances the purpose of federal immigration policy by offsetting what is
20   perhaps the most attractive feature of unauthorized workers—their willingness to work
21   for less than the minimum wage." *Lucas*, 721 F.3d at 936 (internal citations and
22   quotations omitted).

23         Under this unanimous lower court authority, Mariche may bring suit
24   under  29 U.S.C. §§ 206(a), 207(a), 216(b) to recover statutory damages for work
25   actually performed.  Although the FLSA permits equitable remedies in certain
26   circumstances, because Mariche seeks only money damages, we do not address whether
27   equitable remedies would be available to an undocumented worker suing under the
28   FLSA.  Because Mariche's immigration status does not undercut his FLSA claim,

evidence regarding his immigration status or its connection with his employment will be inadmissible at trial, unless it is relevant for some other purpose and not unduly prejudicial. Defendant Phoenix Oil's Motion for Summary Judgment on this issue will be denied. Furthermore, Plaintiff will be entitled at trial to judgment as a matter of law against this defense.

## IV.     UNCLEAN HANDS

Phoenix Oil next asserts Mariche's recovery should be barred by the doctrine of unclean hands because Marchie fraudulently used another person's social security card and birth certificate to obtain employment. Phoenix Oil also asserts Mariche possesses unclean hands because he was fired for doctoring court documents to make it appear that a store manager was involved in criminal activity. As discussed above, Mariche's immigration status has no bearing on his ability to recover unpaid wages. In analyzing Phoenix Oil's unclean hands defense, it is only Mariche's doctoring of documents to make it appear that a store manager was involved in criminal activity that may be considered.

The doctrine of unclean hands is "a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.,* 324 U.S. 806, 814 (1945). Here, Mariche seeks money damages, not equitable relief. Phoenix Oil cites to no persuasive authority suggesting the doctrine of unclean hands should be extended to bar an award of money damages in this case. Even if Mariche was seeking equitable relief, the defense ordinarily does not apply "where Congress authorizes broad equitable relief to serve important national policies." *McKennon v. Nashville Banner Pub. Co.,* 513 U.S. 352, 360 (1995) (denying an employer's request to apply the unclean hands defense to bar all equitable recovery in a case involving violations of the Age Discrimination in Employment Act).

The Supreme Court has, however, carved out one exception to the general rule that an employer cannot use unclean hands to defend against an employment action. In *McKennon*, the court held that if an employee would have been fired for his bad acts if the bad acts had been discovered at the time of their commission, then the employer may offer evidence of those bad acts to mitigate money damages owed for work performed after the bad acts occurred. *Id*. at 362-63. But the exception does not save Phoenix Oil's claim because Mariche performed little to no work after submitting the fraudulent court documents. [DSOF ¶¶ 12-16]. Phoenix Oil quickly discovered the documents were faked and proceeded to fire Mariche for submitting them. [*Id*.]. Thus, there was no period of time during which Mariche remained employed only because Phoenix Oil was ignorant of his bad acts. Phoenix Oil's Motion for Summary Judgment on the theory that Mariche's recovery is barred by the doctrine of unclean hands is denied.

## V. MARICHE'S STATUS AS AN EXEMPT EMPLOYEE UNDER THE FLSA

If an employee is required to work more than forty hours in a week, the FLSA requires an employer to pay the employee an overtime rate of one and one half their usual hourly rate for each additional hour worked beyond the forty hour threshold. 29 U.S.C. § 207(a)(2)(C). An employer is exempted from paying overtime if an employee "is employed in a bona fide executive, administrative, or professional capacity." *Id*. at § 213(a)(1). "An employer who claims an exemption from the FLSA['s overtime requirements] has the burden of showing that the exemption applies. The FLSA is to be liberally construed to apply to the furthest reaches consistent with Congressional direction. To that end, FLSA exemptions are to be narrowly construed against employers and are to be withheld except as to persons plainly and unmistakenly within their terms and spirit." *Webster v. Pub. Sch. Emps. of Wash., Inc.,* 247 F.3d 910, 914 (9th Cir. 2001) (internal citations and quotations omitted).

Phoenix Oil contends Mariche was employed in a bona fide executive capacity, meaning he held an exempt status under the FLSA and was not entitled to overtime pay. To establish this, Phoenix Oil must show that: (1) Mariche was "compensated on a salary or fee basis at a rate not less than $455 per week," (2) his primary duty was "management of the enterprise" in which he was employed, (3) he customarily and regularly directed the work of "two or more other employees," and (4) he had "the authority to hire or fire other employees" or that his "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees [were] given particular weight." 29 C.F.R. § 541.100(a). Phoenix Oil must also show that Mariche earned at least $455 per week. 29 C.F.R. § 541.100(a)(1). Because both parties move for summary judgment on whether Mariche was had status under the FLSA, each bears the respective burden of proving that there is no issue of material fact with respect to their view of Mariche's job duties and salary.

The parties dispute nearly every material fact pertaining to the question of whether Mariche qualified as an exempt employee under the FLSA. They dispute his job duties, the number of employees he supervised, and whether he hired or fired employees. They also dispute whether deductions taken for cash register shortages ever brought his salary under the minimum threshold for an exempt employee. *See Mayhue's Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196 (5th Cir. 1972) (holding that a general deduction for cash register shortages tends to "shift part of the employer's business expense to the employees" and is impermissible if the deduction drops an employee's salary below the statutory minimum). The evidence submitted by both parties is conflicting and contradictory on all dispositive issues. "At the summary judgment stage, the trial judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 242-43. Whether Mariche was an exempt employee is a question that must be reserved for trial. Summary judgment will be denied to both parties. As liability has not yet been

determined, the type and amount of damages Mariche may be entitled to will also be reserved for trial.

## VI. STATUTE OF LIMITATIONS

Claims for unpaid wages under the FLSA are generally subject to a two year statute of limitations. 29 U.S.C. § 255(a). If an employee can prove that an employer's violation of the statute was willful, the statute of limitations is extended to three years. *Id.* To succeed on a claim that an employer's conduct was willful, an employee must show that the employer was not merely negligent and that, instead, "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 134 (1988). This action was filed on March 16, 2013. If Phoenix Oil's conduct was willful, Mariche would be entitled to back pay for all violations occurring after March 16, 2010. If Phoenix Oil's conduct was not willful, Mariche would only be entitled to back pay for violations occurring after March 16, 2011.

At this stage, Mariche has established a genuine question of fact as to whether Phoenix Oil's violations of the FLSA, if any, were willful. Whether Mariche is entitled to a two or three year statute of limitations is a question for the jury. Phoenix Oil's motion for summary judgment on the applicable statute of limitations will be denied.

## VI. DISMISSAL OF KRISTEN DONOVAN

Phoenix Oil moves for summary judgment on the issue of whether defendant Kristen Donovan should be dismissed from the suit. Mariche alleges Kristen Donovan, owner William Donovan's wife, supervised him on occasion and should remain a defendant. [PSSOF ¶ 51]. Under the FLSA an employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Ninth Circuit has "held that the definition of 'employer' under the FLSA is not limited by the common law concept of 'employer' but is to be given an expansive

interpretation in order to effectuate the FLSA's broad remedial purposes." *Boucher v. Shaw*, 572 F.3d 1087, 1090-91 (9th Cir. 2009) (internal citations and quotation omitted).

In support of its assertion that Kristen Donovan should be dismissed, Phoenix Oil offers an excerpt from Mariche's deposition where he asserts that a specific female did not supervise him or determine his compensation. (Doc 32, Exb. 2). Phoenix Oil's excerpt redacts the preceding lines which presumably identify who Mariche is speaking of, but Mariche does not dispute that he was speaking about Kristen Donovan. Phoenix Oil also asserts Ms. Donovan was rarely present at the store and was only paid a small annual sum for part-time auditing work and other minimal tasks. [DSOF ¶ 66]. The only evidence offered by Mariche is his affidavit, in which he states Kristen Donovan sometimes came to do inventory and directed him. [PSOF ¶ 51]. This statement alone is not enough to create an issue of fact regarding whether Kristen Donovan was his supervisor. *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) (noting that "[t]he general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."). Phoenix Oil has successfully carried its burden of showing there is no genuine issue of fact regarding Kristen Donovan's status as Mariche's supervisor. Summary judgment will be granted for Phoenix Oil on this issue, and Kristen Donovan will be dismissed as a defendant in this action.

## VII. MARICHE'S STATE LAW CLAIM

Also before the Court is Phoenix Oil's second Motion for Summary Judgment on Mariche's state law claims (Doc. 38) and Mariche's Response (Doc. 39). Mariche's claim for relief under A.R.S. § 23-350, *et seq.*, is almost identical to his claim for relief under the FLSA. (Doc. 47). Accordingly, the same questions of fact that necessitate denial of Phoenix Oil's Cross-Motion for Summary Judgment on Mariche's FLSA claims (Doc. 33) require denial of Phoenix Oil's Motion for Summary Judgment re: State Law Claim (Doc. 38).

1     IT IS THEREFORE ORDERED that Plaintiff Adran Mariche's Motion for Partial Summary Judgment (Doc. 29) is denied.

    IT IS FURTHER ORDERED that Defendant Phoenix Oil's Cross-Motion for Summary Judgment (Doc. 33) is denied, except that it is granted as to all claims against Defendant Kristen Donovan.

    IT IS FURTHER ORDERED that Defendant Phoenix Oil Inc.'s Motion for Summary Judgment re: State Law Claim (Doc. 38) is denied.

    Dated this 3rd day of June, 2014.

_____
Neil V. Wake
United States District Judge